UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT SCOTT CHRISTENSEN, et al.

        Plaintiffs,

   v.

LIBERTY UTILITIES,

        Defendant.

No. 2:21-cv-02258-TLN-KJN

**ORDER**

This matter is before the Court on Plaintiffs Robert Scott Christensen, Shad Lafonties, Michael Scott Avis, Dannie Anthony, Bret Paulson, Karen Paulson, Wayne Swindall, Clark Roberts, Scot Spangler, Reinhard Schmidt, Anne Reavey, Sheri Rosten, Greg Rondy, Craig Stanford, Rosemarie Sumner, Dennis Albrecht, Amanda Webb, Garner Wayne Meadows, John Borton, Jeffrey Hinds, Diane Anthony, Donna Roberts, David Spangler, Clint Nelson, Deborah Rupp, Brianna Morris, Daniel Wurzburger, Gisele Wurzburger, Lloyd Chichester, Michael Weaver, Heather Haviland, Philip Touchstone, Cathy Touchstone, Theresa Newman, Caroline Stewart, Thomas Stewart, Marilyn Portman, Ella Chichester, Andrew Holzhauer, Sheri Avis, Gerald Williams, Betty Williams, Karen Gulley, Ed Gulley, John McDougal, Kevin Julian, Colleen Julian, Leah Vengley, Sarah Garcia, Sage Garcia, Marianna Ames, and Terry Ames's (collectively, "Plaintiffs") Motion to Remand.  (ECF No. 6.)  Defendant Liberty Utilities

1

(Calpeco Electric) LLC ("Defendant")[1] opposed the motion.  (ECF No. 10.)  Plaintiffs replied.  (ECF No. 12.)  For the reasons set forth below, Plaintiffs' Motion to Remand is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a utility company providing electrical power and services to California residents.  (ECF No. 1-1 at 5.)  On November 17, 2020, powerlines owned, operated, and managed by Defendant ignited the Mountain View Fire in Mono County.  (*Id.* at 2.)  The fire began when Defendant's non-insulated electrical conductors connected, causing nearby vegetation to ignite.  (*Id.* at 4.)  On September 16, 2021, Plaintiffs sued in Mono County Superior Court, alleging Defendant negligently operated, repaired, and maintained its electrical equipment, and had poor electrical and fire safety practices.  (*Id.* at 1, 4.)  On December 8, 2021, Defendant removed the action to this Court based on diversity jurisdiction.  (ECF No. 1.)  On January 21, 2022, Plaintiffs filed the instant motion to remand.  (ECF No. 6.)

## II.    STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending.  28 U.S.C. § 1441(a).  The district court has jurisdiction over civil actions between citizens of different states in which the alleged damages exceed $75,000.  28 U.S.C. § 1332(a)(1).  Removal based on diversity requires that the citizenship of each plaintiff be diverse from the citizenship of each defendant (i.e., complete diversity).  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  For purposes of diversity, a corporation is a citizen of any state in which it is incorporated and any state in which it maintains its principal place of business.  28 U.S.C. § 1332(c)(1).  An individual defendant's citizenship is determined by the state in which they are domiciled.  *Weight v. Active Network, Inc.*, 29 F. Supp. 3d 1289, 1292 (S.D. Cal. 2014).

///

---

[1]    The Notice of Removal states that Defendant Liberty Utilities (Calpeco Electric) LLC was erroneously named as Liberty Utilities by Plaintiff.  (ECF No. 1 at 2.)  Plaintiff does not contest this in the instant motion and indeed treats Defendant Liberty Utilities (Calpeco Electric) LLC as the singular named Defendant in this action.  (*See* ECF Nos. 6, 12.)  Accordingly, the Clerk of the Court is directed to update the docket to reflect the correct name.

"[I]n a case that has been removed from state court to federal court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction, the proponent of federal jurisdiction — typically the defendant in the substantive dispute — has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010). "The preponderance of the evidence standard applies because removal jurisdiction ousts state-court jurisdiction and 'must be rejected if there is any doubt as to the right of removal in the first instance.'" *Id.* (citation omitted). "This gives rise to a 'strong presumption against removal jurisdiction [which] means that the defendant always has the burden of establishing that removal is proper.'" *Id.* (citation omitted).

### III.   ANALYSIS

Plaintiffs argue this Court lacks subject matter jurisdiction over Defendant because its sole member, LUCo, a holding company of public utilities, "has admitted in numerous filings with the California Secretary of State, as well as other documents, that its corporate offices are located in California, not Arizona, and that its Chief Executive Officer and Director Gregory Sorensen is located in California." (ECF No. 6 at 5, 8.) Plaintiffs contend that because they are citizens of California, this defeats diversity jurisdiction.[2] (*Id.* at 4.) In opposition, Defendant does not contest that its citizenship is based upon that of LUCo, but rather that LUCo's principal place of business is actually in Arizona, which provides this Court with diversity jurisdiction. (ECF No. 10 at 8.) Specifically, Defendant argues: (1) *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018), treats a holding company like LUCo differently when determining its citizenship; (2) Defendant has consistently represented in Delaware filings that its principal place of business is in Arizona and the California filings are immaterial; and (3) the residency of a former officer and the residencies of LUCo's officers and directors generally do not control. (*Id.* at 9–17.) The Court will address each of Defendant's arguments in turn.

///

///

---

[2]     Plaintiffs' California citizenship is not contested.

A.    Determination of Citizenship for Holding Companies

Defendant argues that pursuant to *Horn*, holding companies like LUCo are treated differently when determining their citizenship.  (ECF No. 10 at 9.)  Defendant contends that under *Horn*'s holding, LUCo's principal place of business is Arizona.  (*Id.* at 11–13.)  In reply, Plaintiffs argue LUCo's only board meeting had no attendees from Arizona and the Declaration from Todd Wiley relied on by Defendant offers only legal conclusions.  (ECF No. 12 at 5–6.)

A corporation is a citizen of both the state of its incorporation and the state that includes its principal place of business.  28 U.S.C. § 1332(c).  However, a limited liability company "is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  A corporation's principal place of business is the place where "officers direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  Normally this is the state home to the corporation's headquarters, so long as the headquarters is "the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings."  *Id.* at 93.  However, the Ninth Circuit recently held that because holding companies exercise such little control, the "nerve center" should be considered the state where it holds board meetings.  *See Horn*, 880 F.3d at 468.

Another court in this district recently decided a nearly identical case and considered *Horn*.  In *Travelers Commercial Insurance Co.*, the plaintiffs sued the defendant for damages caused by the Mountain View Fire and sought remand to state court once the defendant removed.  *See Travelers Com. Ins. Co. v. Liberty Utilities (CalPeco Elec.) LLC*, No. 2:21-CV-01485-MCE-AC, 2022 WL 992935, at *1 (E.D. Cal. Apr. 1, 2022).  The court noted the Ninth Circuit held in *Horn* that "a *recently-formed* holding company's principal place of business is the place where it has board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere."  *Id.* at *3 (citing *Horn*, 880 F.3d at 465, 468 (emphasis added)).  But the court found *Horn* inapplicable, reasoning LUCo's incorporation over a decade ago did not make it "recently formed."  *Id.*  Additionally, the court noted LUCo did not have routine board meetings and so its activity was not directed from meetings.  *See id.*

("[T]he location of board meetings is proper 'unless evidence shows the corporation is directed

from elsewhere.'") (citing *Horn*, 880 F.3d at 468).'

  Here, Defendant raises the same argument: a single 2017 board meeting in Missouri

establishes its principal place of business lies in Arizona.  (ECF No. 10 at 12 (citing ECF No. 10-

8 at 2).)  LUCo was incorporated on December 9, 2010.  (ECF No. 10-2 at 2.)  Accordingly, as

LUCo is over a decade old, *Horn* does not apply.  *See Travelers*, 2022 WL 992935 at *3.  Thus,

the Court must look to other evidence besides the location of LUCo's board meetings in

determining its principal place of business, or its "nerve center," which is the "actual center of

direction, control, and coordination."  *See Hertz*, 559 U.S. at 93.

    B.  Filings

  Plaintiffs cite certain filings with the California Secretary of State from 2017 through

2020, such as Statements of Information, where LUCo lists its principal executive office as a

California address.  (ECF No. 6 at 5–6 (citing ECF No. 6-2 at 2, 7–8).)  Defendant argues the

forms referenced by Plaintiffs are insufficient to establish its principal place of business as

California.  (ECF No. 10 at 14–15 (citing *Mesa v. Am. Gen. Life Ins. Co.*, No. 1:19-CV-01393-

DAD-EPG, 2020 WL 374354, at *5 (E.D. Cal. Jan. 23, 2020)).)  In *Mesa*, the court found an 18-

year-old registration document to be insufficient proof of the principal place of business.  *See*

*Mesa*, 2020 WL 374354 at *5.  However, while the age of the document was important in *Mesa*,

here the evidence is less than five years old.  Additionally, the court in *Mesa* relied on a passage

from *Hertz* denigrating the "mere filing of a form" as insufficient evidence.  *See id.* at *4 (citing

*Hertz*, 559 U.S. at 97); *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp.

2d 932, 940 (C.D. Cal. 2011) ("[R]eliance on a single piece of evidence, such as a Secretary of

State printout, is insufficient for a party to prove the location of its headquarters under the nerve

center test.").

  Defendant contends LUCo's W9s and tax filings from Delaware establish its principal

place of business as Arizona.  (ECF No. 10 at 15.)  These list an Arizona address as LUCo's

principal place of business and main address, respectively, up through 2020.  (ECF Nos. 10-3, 10-

4.)  Defendant also points to a Certificate of Surrender filed with the California Secretary of State

on March 30, 2021, which lists an Arizona mailing address for its principal executive office. (ECF No. 10-13 at 2.)  Defendant claims the California listings were clerical errors, citing a declaration by LUCo Vice President Todd Wiley.  (ECF No. 10-1 at 9.)  However, the Court finds that the declaration contains "conclusory allegations" that fail to demonstrate the Arizona office directed and controlled LUCo's activities, similar to the declaration that was filed in *Travelers*. *See Travelers*, 2022 WL 992935, at *4 ("The [c]ourt remains skeptical especially since the California address was listed in four separate Statements . . .").  For example, Wiley avers in only a conclusory manner that the Statements of Information mistakenly identified Defendant's addresses as LUCo's "Principal Executive Office," but they were "incorrect filings in California . . . made by a clerical employee in Canada and were incorrectly prepared."  (ECF No. 10-1 at 9–10.)  Wiley avers instead that the Arizona office is LUCo's headquarters and "is a full corporate office," and matters are assigned there "as appropriate for resolution."  (*Id.* at 8, 10–11.)

Aside from the "conclusory allegations" in Wiley's declaration, Defendant's only evidence of activities in Arizona lies in forms.  (ECF Nos. 10-3, 10-4.)  These include the recently filed Certificate of Surrender with the California Secretary of State and tax filings in Delaware listing an Arizona address as LUCo's headquarters.  (ECF No. 10 at 15.)  Such evidence does little to demonstrate from where LUCo actually directs and controls its activities.  Considered together, the filings highlighted by both parties at best reveal inconsistencies and raise questions as to where LUCo's principal place of business really is — far from proving the answer to be Arizona.  *See Travelers*, 2022 WL 992935, at *4.

C.      Residency of Former Officers

Finally, Defendant argues the California residency of LUCo's former President, Gregory Sorensen, is irrelevant and the residencies of LUCo's officers and directors do not control.  (ECF No. 10 at 16.)  Plaintiffs do not address this argument in their reply.  (*See* ECF No. 12.)

Indeed, the Ninth Circuit noted in *Horn* that "the connection between the state where a holding company conducts its business, on the one hand, and the states where its officers and directors reside, on the other, is tenuous."  880 F.3d at 469.  The court further emphasized a test based on the location of a holding company's officers would be "difficult to administer."  *Id.* at

470.  Therefore, whether or not Sorensen is a resident of California or Arizona does nothing to further Defendant's goal of establishing LUCo's principal place of business as Arizona.  While Sorensen's shift to California residency in 2018 does little to prove California citizenship for LUCo, it does *nothing* to show Arizona is the principal place of business.  *See Travelers*, 2022 WL 992935, at *4 (finding the fact that Sorensen was listed as President but also at Downey, California and Tahoe Vista, California addresses in the 2017 and 2018 Franchise Tax Reports, respectively, while listing the California address in four separate Statements of Information filed with the California Secretary of State from 2017 through 2020 raised questions about LUCo's actual principal place of business).

Ultimately, the Court finds Defendant failed to meet its burden of showing citizenship outside of California.  *See id.* at *5; *see also Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) ("The party invoking the removal statute bears the burden of establishing federal jurisdiction.").

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion to Remand. (ECF No. 6.)  Accordingly, the Court REMANDS this case back to the Superior Court of California, County of Mono.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED

DATED:  August 8, 2022

_____
Troy L. Nunley
United States District Judge

7